UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE S. SCOTT,

        Plaintiff,

v.

DANIEL H. HEYNS, *et al.*,

        Defendants.
_____/

Case No. 1:14-cv-1277

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants Becher and Buskirk's motion to dismiss (docket no. 23).

**I.    Plaintiff's claim**

Bellamy Creek Correctional Facility (IBC) Transportation Officer Becher and IBC Nurse Buskirk are the two remaining defendants in this action. Plaintiff alleged that these two defendants violated his Eighth Amendment rights. Plaintiff's claims arise from an incident which occurred on October 10, 2013, when he was being transferred from the Saginaw Correctional Facility to IBC. On that date, Officer Becher allegedly drove a transportation bus recklessly off the road. According to plaintiff, before the bus hit a bump in the road, "several" inmates "begged" him to slow down "before we all die" but Becher "refuse[d] and laugh[ed] it off." Amend. Compl. (docket no. 1, PageID.10).[1] Plaintiff alleged that the bus hit a bump, that the front tires went two to three feet

---

[1] The Court notes that plaintiff filed a complaint on the form provided by the Court (docket no. 1, PageID.1-6). Attached to this complaint was a second complaint (PageID.7-19) which included a purported verification (PageID.19), an affidavit (docket no. 1-1), and various exhibits (docket no. 1-2). It is unclear

off the road into the air, that plaintiff, other inmates and correctional transportation officer Durnell were "ejected" from their seats, two to three feet in the air, and that plaintiff hit his back and head on his seat, injuring himself. *Id.* According to plaintiff, "I yelled at Correctional Transportation Officer Becher that I was injured and needed to go to the hospital, but he ignored my pleas for help." *Id.* When they arrived at IBC, plaintiff was taken to healthcare where he told the nurse and nurse practitioner that he was in extreme pain, that his back, neck and head were hurting, and that he needed x-rays. *Id.* The health care providers refused his request for an x-ray, gave plaintiff aspirin, and told him "to put a hot towel on it." *Id.* Several days later, on October 22, 2013, plaintiff went to healthcare to speak with Nurse Buskirk about his grievances. *Id.* at PageID.11. The nurse told plaintiff to sign off on the grievance and she would talk to the doctor "about something for [his] pain." *Id.* When plaintiff refused, she sent him down the hallway to speak to the doctor. *Id.* Plaintiff seeks various relief, including $500,000.00 of compensatory damages ($250,000.00 per defendant), $200,000.00 of punitive damages ($100,000.00 per defendant), and a preliminary injunction that he be made whole by providing him with medical care. *Id.* at PageID.19.

> II. **Defendants' motion to dismiss**
>
> A. **Legal standard**

Defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted. Specifically, defendants contend that plaintiff's action is barred by the affirmative defense of qualified immunity.

---

from the Court's opinion screening plaintiff's claim as to which "complaint" it considered to be operative. *See* Opinion (docket no.4). Plaintiff cannot have two complaints filed in this action. For purposes of this report, the Court construes the second complaint (PageID.7-19) as an amended complaint which is the operative pleading in this lawsuit.

>       To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). However, this liberal construction does not require the Court "to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Nor can a court rewrite a complaint to include claims that were never presented. *Rogers v. Detroit Police Deptartment*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). To hold otherwise would require the court to explore all potential claims of a *pro se* plaintiff and transform the district court to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party. *Id.*

   **B.**  **Plaintiff's affidavit**

Plaintiff's response is accompanied by two affidavits and a memorandum. *See* Plaintiff's "Affidavit of facts under Fed. R. of Civ. Proc. 56(f)" (March 17, 2016) (docket no. 26, PageID.152); Affidavit of Quentin Betty (dated Dec. 11, 2014) (docket no. 26-1, PageID.154); and MDOC Memorandum regarding request for health records (March 7, 2016) (docket no. 26-1,

PageID.156). While plaintiff's submission of these documents would be appropriate in responding to a motion for summary judgment under Fed. R. Civ. P. 56, defendant's motion seeks dismissal under Fed. R. Civ. P. 12(b)(6), not summary judgment under Fed. R. Civ. P. 56. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). In this regard, Fed. R. Civ. P. 12(d) provides in pertinent part that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Here, these three documents are not appropriate submissions in response to a motion to dismiss. These documents were not referred to in the amended complaint, were not attached to the amended complaint, were not in the public records, and were not previously filed in this case. Accordingly, these documents are excluded from consideration under Fed. R. Civ. P. 12(d). *See, e.g., Luis v. Zang*, -- F.3d --, No. 14-3601, 2016 WL 4363151 at *9 (6th Cir. Aug. 16, 2016) (although a party attached an affidavit to its motion to dismiss, the affidavit was not "referred to in the complaint" and did not fall within the categories of documents that may be considered at this point in the litigation).

### C.  Qualified immunity

### 1.  Legal standard

Defendants contend that they are entitled to dismissal on the affirmative defense of qualified immunity.[2] Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive question is whether the violative nature of the *particular* conduct at issue in the lawsuit is clearly established. *See Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350.

In the context of a motion to dismiss, the Court engages in a two-part test to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 562 (6th

---

[2] The Court notes that because defendant has not filed an answer in this action, he has not pled the affirmative defense of qualified immunity, but has raised it in the context of a motion for summary judgment. *See generally, Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Defendant has the burden of pleading qualified immunity in his answer . . . It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful.").

Cir. 2011) (internal quotations omitted). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 562-63. The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

### 2.  Plaintiff's Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "The contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional

violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 3. Officer Becher

The Court construes plaintiff's complaint as raising two claims against Officer Becher. First, plaintiff alleged that Becher's reckless driving violated his Eighth Amendment right to be transported in a safe and reasonable manner without causing him undue physical pain. Second, plaintiff alleged that Becher refused his request to go to the hospital, and instead continued to IBC.

#### a. Reckless driving

Defendant contends that plaintiff has not shown a clearly established claim of deliberate indifference arising from the alleged facts. "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority." *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013), citing *Ashcroft v. al-Kidd*, -- U.S. --, 131 S.Ct. 2074, 2084 (2011). "In inquiring whether a constitutional

right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir.1993). "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007). However, even without on-point authority, an official's conduct can be held to be clearly unlawful in an obvious case. *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005).

"Deliberate indifference requires more than a showing of mere mistreatment or negligence." *Stoudemire v. Michigan Department of Corrections*, 705 F.3d 560, 568 (6th Cir. 2013). In his response, plaintiff cited two cases in support of his claim. In *Brown v. Missouri Department of Corrections*, 353 F.3d 1038 (8th Cir. 2004), the court held that the allegations in an inmate's complaint stated §1983 claim against prison officials for deliberate indifference to his safety in violation of Eighth Amendment, with respect to injuries he sustained in automobile accident while being transported to correctional facility by officials, where the inmate alleged that he asked the officials to fasten his seatbelt, but they refused, and he was unable to do so himself because of his shackles. In *Brown v. Morgan*, 1994 WL 610993 (8th Cir. Nov. 7, 1994) (unpublished), the Eighth Circuit found that the plaintiff stated a cause of action under the Eighth Amendment against a sheriff's deputy where the plaintiff alleged: that he was a passenger in a car driven by the deputy; that the deputy refused to let him wear a seat belt; that the deputy drove at a high rate of speed in bad weather; that the deputy refused to slow down despite the plaintiff's pleas for him to do so; that the deputy purposely sped up; that the deputy smiled when he saw that the plaintiff was scared, asking him "Are you scared?"; and which resulted in an accident.

Plaintiff has not met his burden to establish that Officer Becher violated a clearly established Eighth Amendment right to transport him safely. Given the facts alleged in the complaint, it is not obvious that Becher's conduct was a clear violation of the Eighth Amendment. *See Sample*, 409 F.3d at 698. Plaintiff has provided no Supreme Court or Sixth Circuit caselaw on point. The two cases cited by plaintiff are from a different circuit (one of which is unpublished) and involved the officers' refusal to fasten the prisoners' seat belts. No such refusal is alleged in this case. Plaintiff has not shown any "controlling authority or a robust consensus of cases of persuasive authority" establishing that Officer Becher's alleged reckless driving violated an Eighth Amendment right. *See Ortega*, 737 F.3d at 439; *Carver*, 474 F.3d at 287; *Walton*, 995 F.2d at 1336. Accordingly, Officer Becher is entitled to qualified immunity on this Eighth Amendment claim.

      **b.**    **Failure to drive plaintiff to a hospital**

Plaintiff also alleged that Officer Becher was deliberately indifferent to his serious medical needs by failing to take him directly to a hospital. By his own allegations, plaintiff was promptly seen by healthcare staff when he arrived at IBC. Plaintiff does not allege that Officer Becher interfered in any way with his ability to obtain treatment once the bus arrived at IBC. The question before the Court is whether it was clearly established that Officer Becher violated plaintiff's Eighth Amendment right when he decided to drive the bus to the prison rather than a hospital.

Plaintiff has cited two cases in support of his position, *Scicluna v. Wells*, 345 F.3d 441 (6th Cir. 2003), and *Lefler v. Unknown Party No. 1*, No. 1:10-CV-800, 2010 WL 3731127 (W.D. Mich. Sept. 17, 2010).[3] *Scicluna* involved a prison inmate who suffered a fractured skull. The Court denied qualified immunity to a defendant doctor who recalled the inmate from a hospital,

---

[3] The Court notes that plaintiff's brief included the Lexis citation for the *Lefler* case.

examined him, and then transferred him to a correctional facility which did not have the facilities to treat his condition. In denying the doctor's claim of qualified immunity, the court stated that "[t]ransferring a prisoner in need of urgent medical attention to a facility that the official knows is unable to provide the required treatment is conduct that would alert a reasonable person to the likelihood of personal liability." *Scicluna*, 345 F.3d at 446. This case, which involved a doctor's decision to transfer a prisoner from a hospital to a correctional facility, involves entirely different conduct than that at issue in this lawsuit. *See Mullenix*, 136 S. Ct. at 308.

In *Lefler*, the plaintiff prisoner was involved in a traffic accident, in which he experienced whiplash and suffered injuries to his neck, knee, and back. The transporting officers did not wish to call an ambulance, but a reporting officer eventually did so, and the prisoners were taken to a medical center for treatment. After treatment, the plaintiff was taken to the correctional facility, but the medical staff had left for the night, leaving only one nurse on staff. The plaintiff alleged that the defendants should have been aware at the time they left the hospital that the prison medical staff would be gone. The Court granted defendant transportation officers summary judgment because they were neither aware of facts suggesting a substantial risk of serious harm or drew such an inference, noting that the plaintiff did not allege that he was bleeding or had any immediately apparent serious injury. *Lefler*, 2010 WL 3731127 at *5. The conduct in *Lefler* is distinguishable because the officers in that case transported the prisoner to a hospital first, then to the prison where there was apparently insufficient staff on duty. Here, plaintiff was seen by both a nurse and nurse practitioner upon his arrival at IBC. Furthermore, it is unclear how plaintiff can rely on *Lefler* when the Court granted defendants' motion for summary judgment.

Plaintiff has not met his burden to establish that Officer Becher violated a clearly established Eighth Amendment right to transport him directly to a hospital. Neither case cited by plaintiff involves the wrongful conduct alleged against Becher. Given the facts alleged in the complaint, it is not obvious that Becher's conduct was clearly unlawful. *See Sample*, 409 F.3d at 698. In the undersigned's opinion, Becher's decision to drive to IBC rather than a hospital was an exercise of reasonable judgment which should be shielded by qualified immunity. Accordingly, Officer Becher is entitled to qualified immunity on this Eighth Amendment claim.

### 4.    **Nurse Buskirk**

Plaintiff's allegations against Nurse Buskirk do not establish an Eighth Amendment violation. Nurse Buskirk's motion to dismiss is based upon the fact that on October 22, 2013, she interviewed him with respect to a previously filed grievance. While plaintiff has attempted to link Nurse Buskirk's grievance interview with his medical treatment, these are two distinct issues. Plaintiff alleged that he saw a medical practitioner shortly after speaking with Nurse Buskirk about the grievance. It would be the decision of the treating doctor, not the grievance reviewer, to determine the scope of plaintiff's medical treatment on that date. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, Nurse Buskirk's motion to dismiss should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 23) be **GRANTED** and this action **DISMISSED**.

Dated:  August 31, 2016            /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).